IN RE APPLICATION OF
WILNER'S LIVERY SERVICE, INC.

Superior Court of New Jersey
Appellate Division

Argued March 20, 1978—Decided April 26, 1978.

---

Before Judges ALLCORN, MORGAN and HORN.

*Mr. Leonard J. Felzenberg* argued the cause for appellant.

*Mr. Arthur T. Vanderbilt, II,* Deputy Attorney General, argued the cause for respondent New Jersey Board of Public Utilities (*Mr. John J. Degnan,* Attorney General, attorney [*Mr. William F. Hyland,* former Attorney General]; *Mr. Stephen Skillman,* Assistant Attorney General, of Counsel).

PER CURIAM. Appellant Wilner's Livery Service, Inc. (Wilner) appeals a decision of the Board of Public Utilities

(Board) holding that "The services rendered by Wilner * * * constitutes [sic] charter services within the purview of *N. J. S. A.* 48:4–1 and therefore places [sic] Wilner's business activities within the jurisdiction of the Board," and an order directing it to apply to said Board for a Certificate of Public Convenience and Necessity (Certificate) within a stated time, or be subject to penalty for failing to do so.

The prelude to this appeal commenced in 1976, when the Board sent letters to Wilner and other operators of limousine services similar to those furnished by Wilner and known to be operating without certificates, instructing them to apply for same. In response, on January 17, 1977 Wilner filed a petition with the Board demanding judgment that it was not subject to the Board's jurisdiction. On April 25, 1977 and on May 26, 1977 the board examiner conducted a public hearing at which Wilner was represented. At the conclusion of the hearing the parties waived preparation of the hearing examiner's report and recommendation, and consented to the certification of the record directly to the Board for final action.

On September 16, 1977 the Board held that it had jurisdiction over Wilner and ordered Wilner to file a petition for certification within 15 days. On October 3, 1977 Wilner filed the instant appeal. On October 31, 1977 on Wilner's application, we granted a stay of the Board's order pending appeal.

Wilner contends that the Board erred in holding that its limousine operations, described hereinafter in the factual determinations of the Board, were regulated by it pursuant to the statutory provision dealing with autobuses, *N. J. S. A.* 48:4–1 *et seq.* It asserts that its limousine operations fall under the statutory provisions pertaining to autocabs, *N. J. S. A.* 48:16–13 *et seq.,* which reads as follows:

"Autocab" means and includes any automobile or motor car engaged in the business of carrying passengers for hire which is held out, announced or advertised to operate or run or which is operated or run over any of the streets or public highways of this state, and

which is hired by charter or for a particular contract, or *by the day or hour or other fixed period,* or to transport passenger to a specified place or places, or which charges a fare or price agreed upon in advance between the operator and the passenger. Nothing in this article contained shall be construed to include taxicabs, hotel busses or busses employed solely in transporting school children or teachers or *autobusses which are subject to the jurisdiction of the board of public utility commissioners,* or interstate autobusses required by federal or state law or rules of the board of public utility commissioners to carry insurance against loss from liability imposed by law on account of bodily injury or death. [Emphasis supplied]

The above-quoted section is a part of chapter 16 of *N. J. S. A.* Title 48, which covers taxicabs (*N. J. S. A.* 48:16–1 to 12), autocabs (*N. J. S. A.* 48:16–13 to 22) and jitneys (*N. J. S. A.* 48:16–23 to 28), each of which type of business is respectively defined within the sections pertaining to it. The factual determinations to the extent made by the Board, as follows, were not disputed by Wilner:

For historical purposes it should be noted that prior to the public hearings, the Bureau of Rail and Motor Carriers (Bureau) requested Wilner to comply with *N. J. S. A.* 40:4–3 by filing a petition for the issuance of a Certificate of Public Convenience and Necessity in accordance with *N. J. A. C.* 14:1–5.1 *et seq.* Wilner took the position that it is not operating a business in the State of New Jersey as defined by *N. J. S. A.* 48:4–1 et seq., and therefore is not subject to the Board's jurisdiction. Wilner refused to comply with the Bureau's request.

The testimony of David Wilner, president and chief executive operating officer of petitioner, shows that Wilner is not certified by the Board, but does provide the public a business commonly referred to as a limousine or livery service. More particularly, the service offered and provided, is the furnishing of limousines with a chauffer [*sic*] to transport passengers to a given point, either for private livery service or to attend weddings, on a state-wide basis. In addition thereto, Wilner also furnishes limousines, hearses and flower cars to funeral directors who provide same as part of their funeral services.

The services provided by petitioner as above stated, which includes [*sic*] transportation of passengers to New York airports, are not operated along fixed routes or under a time schedule. The private limousine services also used for weddings, are available to the general public, either on a flat rate for a given destination or on a time or mileage basis, whichever is greater. Similar charges are made

to funeral directors for the use of the limousines, hearses and flower cars.

Petitioner operates 1 station wagon, 18 limousines, 11 hearses and 7 flower cars. The insurance policy for the limousines and station wagon has been filed with the City Clerk of Rahway and these vehicles bear autocab registration plates. No certificates of registration have been filed with any municipality outside of Rahway. The hearses and flower cars carry private registration plates.

The Board's contention that it has jurisdiction is founded on a claim that *N. J. S. A.* 48:16–13 *et seq.,* which, as stated, deals with autocabs as defined above, was impliedly repealed in 1973 upon the enactment by the Legislature of *L.* 1973, *c.* 158, § 9; *N. J. S. A.* 48:4–1.2. This statute reads:

The board shall have full jurisdiction over charter busses and special busses, to the same extent that it has jurisdiction over autobuses.

The Board acknowledges that in 1936, at the time of the enactment of *N. J. S. A.* 48:16–13 to 22 (*L.* 1936, *c.* 193), dealing with autocabs, there was a clear distinction between an autobus and an autocab, because then an autocab, unlike an autobus, was hired by charter and thereby constituted a limousine service. On the other hand, an autobus, unlike an autocab, indiscriminately accepted and discharged persons at the termini or at points along the route on which it was operating (*L.* 1926, *c.* 144, § 6). Autobuses were under the jurisdiction of the Board, *N. J. S. A.* 48:2–13 (*L.* 1926, *c.* 144, § 6), but autocabs were not. They were under municipal regulation, *N. J. S. A.* 48:16–17.

In 1946 the Legislature revised *N. J. S. A.* 48:4–1 by including charter-bus operations within the definition of autobuses, in the following language:

The term "charter bus operation" *as used in this chapter* means and includes the operation of an autobus or autobusses by the person owning or leasing such bus or busses pursuant to a contract, agreement or arrangement to furnish an autobus or autobusses and a driver or drivers thereof to a person, group of persons or organiza-

tion (corporate or otherwise) for a trip designated by such person, group of persons or organization for a fixed charge per trip, per autobus or per mile. [*L.* 1946, *c.* 125, § 1; emphasis supplied]

Notwithstanding the charter-bus amendment in 1946, which would appear to have given the Board jurisdiction over such operations in 1946, it was not until 1973 that the Legislature enacted the already quoted *N. J. S. A.* 48:4–1.2 (*L.* 1973, *c.* 158, § 9), expressly investing the Board with jurisdiction over charter buses.

The implied repealer of *N. J. S. A.* 48:16–13 *et seq.* by *N. J. S. A.* 48:4–1.1 is said by the Board to result from what it contends is an "irreconcilable conflict between these two acts." We disagree and reverse.

The law applicable to implied repeal of statutes was reiterated in *Swede v. Clifton,* 22 *N. J.* 303 (1956):

The question of repeal is essentially one of legislative intention; and there is a presumption as a matter of interpretive principle and policy against an intent to effect a repeal of legislation by mere implication. The purpose so to do must be free from all reasonable doubt. Repeals by implication are not favored in the law; and where the statutory provisions may reasonably stand together, each in its own particular sphere of action, there is not the repugnancy importing the design to repeal the earlier provision. *Kuberski v. Haussermann,* 113 *N. J. L.* 162 (Sup. Ct. 1934;) *Goff v. Hunt,* 6 *N. J.* 600 (1951); *Henninger v. Board of Chosen Freeholders of Bergen County,* 3 *N. J.* 68 (1949). [at 317]

See also *Brewer v. Porch,* 53 *N. J.* 167 (1969).

We do not find that the purpose of the Legislature to do so is free from all reasonable doubt. In fact, we doubt that the Legislature intended to repeal the autocab provisions or that those provisions are in irreconcilable conflict with the charter-bus provisions of the statute.

*N. J. S. A.* 48:4–1, it will be noted, expressly confined the use of the definition of "autobus" to chapter 4, which dealt exclusively with autobuses as such and not with autocabs. *N. J. S. A.* 48:2–13 grants to the Board jurisdiction over public utilities "as hereinafter in this section defined." We

must assume that the Legislature was at all times aware of the sections dealing with autocabs, *N. J. S. A.* 48 :16–13 to 22, inclusive. This is especially true where the statute has been amended in other particulars without a change in or an express repeal of that part which it is now contended was impliedly repealed. *Quaremba v. Allan,* 67 *N. J.* 1 (1975) ; *Matawan v. Monmouth Cty. Tax Bd.,* 51 *N. J.* 291 (1968). Interestingly, in 1973 when the Board was granted jurisdiction over charter buses, the Legislature enacted an amendment to *N. J. S. A.* 48 :16–23 (as to jitneys) and yet failed to disturb the sections dealing with autocabs.

We observe that the sponsor's statement appended to *L.* 1946, *c.* 125, § 1, states :

> The purpose of this act is to clarify the present definition of auto-bus so that the Board of Public Utility Commissioners will have jurisdiction over charter busses as well as other busses.

This Statement furnishes additional support for our view that in the use of the word "busses" and "autobus" there was no intention to affect any other section of the statute by way of implied repeal.

In *Princeton Taxi Owners v. Princeton Mayor & Coun.,* 142 *N. J. Super.* 476 (App. Div. 1976), we rejected the Board's contention that a taxicab service which did not travel on a fixed route, whose drivers were obligated to accept all passengers within seating capacity at any point in the municipalities and to transport them to any destination therein by such route within a reasonable time under the circumstances, including other passenger pickups and discharges, was an autobus, and held that that operation was a taxi service under *N. J. S. A.* 48 :16–1.

A comparison of the definition of "taxicab," *N. J. S. A.* 48 :16–1, and "autocab," *N. J. S. A.* 48 :16–13, indicates to us that an autocab was conceived to be a motor vehicle in the nature of a taxicab and which differs from the definition of a taxicab only in that it is hired by charter, "by the day or hour or other fixed period." The charter arrangement

for autobuses as defined in *N. J. S. A.* 48:4–1 does not refer to a charge based on time — but only for a designated trip "for a fixed charge per trip, per autobus or per mile."

We do not overlook *In re Salem Transportation Co. of New Jersey,* 55 *N. J.* 559 (1970), or *In re Asbury-Red Bank Limousine Service,* 55 *N. J.* 551 (1970), which cases are cited by the Board as indicating that our Supreme Court has recognized limousines to be autobuses within the purview of *N. J. S. A.* 48:4–1 *et seq.* However, those cases dealt with limousine service operating intermunicipally between fixed termini and were not decided in the context of the facts in the instant case. At the time those cases were decided the issues therein presented were completely foreign to that involved here. In fact, the Supreme Court may have considered the vehicles as operated in those cases to be buses, in stating, in *In re Asbury-Red Bank Limousine Service, supra*:

* * * Newark has no real interest exceeding that of the other municipalities through which the buses will travel [55 *N. J.* at 558]

In view of the foregoing, we are of the view that the service as rendered by Wilner is not included within the jurisdiction of the Board. Accordingly, the decision of the Board is reversed.